UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SUZANNE S.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:19-cv-01365-MJD-JPH |
| | ) |
| ANDREW M. SAUL, Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Claimant Suzanne S. filed for disability insurance benefits ("DIB") from the Social Security Administration ("SSA") on May 7, 2015, alleging an onset date of September 10, 2014. [Dkt. 4-2 at 33.] Her application was initially denied on July 27, 2015, [Dkt. 4-5 at 3], and upon reconsideration on February 22, 2016, [Dkt. 4-5 at 8]. Administrative Law Judge Cindy Martin (the "ALJ") conducted a hearing on September 6, 2017. [Dkt. 4-2 at 53-91.] The ALJ issued a decision on November 27, 2017, concluding that Claimant was not entitled to receive benefits. [Dkt. 4-2 at 30.] The Appeals Council denied review on February 7, 2019. [Dkt. 4-2 at 2.] On April 4, 2019, Claimant timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Dkt. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

# I. **STANDARD OF REVIEW**

"The Social Security Act authorizes payment of disability insurance benefits … to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last … not less than 12 months." *Id*. at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II. BACKGROUND

Claimant was 44 years of age at the time she applied for DIB. [Dkt. 4-6 at 2.] She has completed high school and previously worked as a "utility tech." [Dkt. 4-7 at 23.][2]

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Claimant was not disabled. [Dkt. 4-2 at 44.] Specifically, the ALJ found as follows:

- At Step One, Claimant had not engaged in substantial gainful activity[3] since September 10, 2014, the alleged onset date. [Dkt. 4-2 at 35.]

- At Step Two, she had "the following severe impairments: congenital venous angioma in the right basal ganglia, headaches with vertigo, and cervical disk disease." [Dkt. 4-2 at 35.]

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Dkt. 4-2 at 37.]

- After Step Three but before Step Four, Claimant had the RFC "to perform sedentary work as defined in 20 CFR 404.1567(a) except: [she] can occasionally lift/carry up to ten pounds, and can frequently lift/carry less than ten pounds; stand and/or walk for two hours of an eight-hour workday; sit for six hours of an eight-hour workday; occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds; occasionally balance, stoop, crouch, kneel, and crawl; avoid concentrated exposure to hazards such as dangerous machinery and unprotected heights; and avoid concentrated exposure to extreme heat and cold, humidity, wetness, dusts, odors, gases, and poor ventilation." [Dkt. 4-2 at 38.]

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Claimant's RFC, she was incapable of performing her past relevant work as a packer. [Dkt. 4-2 at 43.]

- At Step Five, relying on VE testimony and considering Claimant's age, education, and RFC, there were jobs that existed in significant numbers in the national economy that she

---

[2] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

could have performed through the date of the decision in representative occupations, such as an addresser, document preparer, and spotter. [Dkt. 4-2 at 43-44.]

### III. DISCUSSION

Claimant raises three assertions of error regarding the ALJ's decision: (1) the ALJ failed to account for Claimant's severe fatigue when assessing her RFC or soliciting testimony from the VE; (2) the ALJ failed properly to consider Listing 11.02; and (3) the ALJ failed to acknowledge Claimant's good work history and properly assess her credibility.

**A. Fatigue**

Claimant cites to numerous instances in the record in which she alleged symptoms of severe fatigue, including associated issues with concentration and the need to take daily naps. [Dkt. 7 at 18.] She contends that the ALJ failed to account for her fatigue both in assessing her RFC and in the hypothetical questions he presented to the VE. [*See* Dkt. 7 at 18-20.] The ALJ depended on the VE's responses as the basis to deny Claimant at Step Five. [*See* Dkt. 4-2 at 43-44.]

The most applicable case that Claimant relies on is distinguishable. In *Allensworth v. Colvin*, 814 F.3d 831, 835 (7th Cir. 2016), the Seventh Circuit remanded a claim because the ALJ had credited that the claimant had a severe impairment, obstructive sleep apnea, but the ALJ had not explained how a limitation to simple work—ostensibly to account for the impairment— was adequate to account for the claimant's hypersomnia during the day. Here, there is no indication in the written decision that the ALJ found a severe, medically determinable impairment that would cause Claimant's alleged fatigue, nor that the ALJ credited the alleged symptoms.

The Commissioner asserts that the ALJ cited record evidence that a treating neurologist, Elizabeth Zauber, M.D., had not found any clinical findings to support Claimant's allegations

5

and diagnosed her with only "subjective ataxia imbalance with fatigue." [Dkt. 13 at 11-12] (citing Dkt. 4-21 at 60).] As noted by the ALJ, in August 2016, Claimant reported to Dr. Zauber that her activities were limited mostly by fatigue, more so than imbalance, and clinical testing demonstrated some "mild" findings including "incoordination on rapid alternating movements that was very subtle." [Dkt. 4-2 at 41 (citing Dkt. 4-21 at 59).] Dr. Zauber's assessment noted "no hard clinical findings with the exception of some very subtle changes in tone, coordination, and reflex[es]." [Dkt. 4-21 at 60.] Dr. Zauber explained:

> To complete the workup, I have sent a Huntington gene test today given the fact that at her age range, this would be perhaps more common than spinocerebellar ataxia: with mild cognitive symptoms and mood symptoms. I would not pursue genetic testing for spinocerebellar ataxias at this time given no clear cerebellar signs on exam or on imaging.

[Dkt. 4-21 at 60.] The result of the genetic testing was negative for Huntington's disease. [Dkt. 4-21 at 61.]

The Commissioner cites *Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989), for the proposition that assertions alone cannot support a disability. [Dkt. 13 at 12.] In *Stuckey*, the court depended on regulations that are no longer applicable for the proposition that "[t]o establish physical or mental impairments, a claimant must present actual medical evidence of symptoms, laboratory findings, and other information. A claimant's statement of symptoms is not sufficient to establish the existence of an impairment; some objective evidence should be present." 881 F.2d at 508 (citing 20 C.F.R. §§ 404.1508; 404.1528 (both now "reserved") (other case citations omitted)). The current regulations establish the same legal point, explaining the type of evidence that is needed for the SSA to consider an impairment:

> Your impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source.

6

> We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s).

20 C.F.R. § 404.1521. Social Security Ruling ("SSR") 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *3, further explains that "[a]n individual's symptoms, such as pain, fatigue, shortness of breath, weakness, nervousness, or periods of poor concentration will not be found to affect the ability to perform work-related activities for an adult […] unless medical signs or laboratory findings show a medically determinable impairment is present." In *Stuckey*, the court explained that the claimant's knee pain was not supported by radiographic evidence or "any other manifestations of his assertions of pain . . . ." 881 F.2d at 508-09. The court held that the Commissioner's "conclusion that Stuckey did not suffer from osteoarthritis was supported by substantial evidence." *Id*. at 509.

Here, the record does not supply an obvious medically determinable impairment that supports consideration of Claimant's fatigue. Claimant does not develop her argument by asserting the medically determinable impairment that is the basis of her alleged fatigue. As noted above, the ALJ found Claimant's severe impairments to include a congenital venous angioma and headaches with vertigo. However, as the ALJ explained, the venous angioma was noted to be of "extremely doubtful clinical significance." [Dkt. 4-2 at 39 (citing Dkt. 4-9 at 19 (interpretation of MRI by radiologist)).] On referral, a physician with Goodman Campbell Brain and Spine, Troy D. Payner, M.D., reassured Claimant that there was a low probability that her venous angioma was contributing to any of her symptoms, including her documented complaints of fatigue. [Dkt. 4-20 at 10-11.] Another physician, Scott K. Sanders, M.D., who treated Claimant concurred that "the venous angioma noted on her MRI is an incidental finding." [Dkt. 4-9 at 21.] The ALJ also explained that clinical testing had not revealed any etiology of the

vertigo, [Dkt. 4-2 at 39], and that Claimant had reported that her dizziness and headaches had resolved, [Dkt. 4-2 at 41].

However, the Court cannot resolve the argument on the basis that there was no medically determinable impairment to support Claimant's allegations of fatigue because the ALJ's written decision does not clearly endorse that rationale. "Under the *Chenery* doctrine, the Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace." *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) (citing *SEC v. Chenery Corp.,* 318 U.S. 80, 87–88 (1943); *Parker v. Astrue,* 597 F.3d 920, 922 (7th Cir. 2010)). Likewise, the Court is limited by the *Chenery* doctrine. "The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *SEC*, 318 U.S. at 87.

Perhaps the ALJ did not disregard Claimant's alleged symptoms of fatigue based on the lack of a medically determinable impairment because, despite the absence of any definitive diagnosis, there were neurological signs shown on examination. In addition to the mild findings noted above, Dr. Zauber noted "significant truncal arm movements consistent with astasia-abasia."[4] [Dkt. 4-21 at 60.] Another neurologist, Theodore A. Nukes, M.D., assessed Claimant with a vague "degenerative condition associated with truncal ataxia and lower extremity spasticity," with the associated signs listed in the diagnosis demonstrated on examination. [Dkt. 4-21 at 57.] The record did not clearly demonstrate the cause of the neurological signs, nor

---

[4] "Astasia-abasia is a Greek term which refers to the inability to stand upright due to lack of motor coordination. The term 'astasia' means inability to stand and 'abasia' refers to the inability to walk properly. Patients of this disorder are, however, able to move their legs naturally while walking or lying down." The signs are not completely understood and can be attributed to psychogenic causes, conversion disorder, or neurological conditions. Medical Information and Guidance, https://medguidance.blogspot.com/2014/08/astasia-abasia-definition-symptoms.html (last visited December 5, 2019).

8

whether they were organic or phycological in origin, much less did the record establish any connection between them and Claimant's alleged fatigue.

Considering the state of the record, the Court concludes that the ALJ did not commit reversable error in assessment of Claimant's RFC based on her allegations of fatigue. The Seventh Circuit has held that "[w]hen no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error." *Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019) (citing *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)). Here, as noted by the Commissioner, no medical source assessed that Claimant (1) was unable to perform sedentary work or (2) required greater limitations than the ALJ credited in her RFC finding. [Dkt. 13 at 9-10.]

The ALJ gave "some weight" to the opinion of a treating physician, Amy Villavicencio, M.D. [Dkt. 4-2 at 42.] On November 6, 2015, Dr. Villavicencio treated Claimant for Arnold Chiari Malformation Type I associated with "ongoing difficulty with stumbling and falling if she stands for more than 10-15 minutes." [Dkt. 4-22 at 28.] Claimant reported that her "dizziness stopped two months ago as well as the headaches." [Dkt. 4-22 at 28.] Claimant further reported that she had fallen twice since her last treatment visit and was "due to return to work but does not feel like it would be safe to pack at Frito Lay as it requires her to stand all day and repetitive[ly] bend [and] twist[.]" [Dkt. 4-22 at 28.] Dr. Villavicencio referred her to the Mayo Clinic for further evaluation, noting that she had already referred Claimant "to several neurologist/ neurosurgeons without an answer." [Dkt. 4-22 at 29.] Dr. Villavicencio opined that there may not be answer. [Dkt. 4-22 at 29.] More vocationally relevant, Dr. Villavicencio noted that Claimant was "able to complete all her ADL [activities of daily living] at home alone. With this, I did discuss that she may not be a candidate for disability. [S]he will try to work with her job to

9

see if they would try [a] sit down job for her[.]" [Dkt. 4-22 at 29.] No physician of record assessed that Claimant would be incapable of performing or sustaining sedentary work.

The Court finds *Castille v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010), to be controlling in this case. In *Castille*, the Seventh Circuit affirmed an ALJ's RFC finding despite the presence of a medically determinable impairment—chronic fatigue syndrome—and alleged issues with absenteeism, explaining that a medical expert had found the claimant capable of sedentary work and that "[i]t is Castille, however, who bears the burden of proving that she is disabled, and she failed to present any medical evidence linking her chronic fatigue syndrome to the unacceptable level of absenteeism she alleges. Contrary to her claims, none of Castille's treating physicians opined that she was incapable of working." *Id.* (citing 20 C.F.R. § 404.1512(a)). Accordingly, the Court does not find error with the ALJ's RFC finding.

**B. Listing 11.02**

In acknowledgment that there is no specific listing for migraine headaches, Claimant presents nonbinding decisional, district court authority and "the SSA's nonbinding, internal procedures (called the Program Operations Manual System, or "POMS") which operationalize (and interpret) the regulation[s]," *Shawn G. v. Berryhill*, 2018 WL 3721393, at *4 (S.D. Ind. Aug. 6, 2018), that the closest analogy to consider in whether migraines equal a listing is a listing for seizures. [Dkt. 7 at 21.] The regulations provide that the SSA will consider analogous listings if the claimant has an impairment that is not listed:

> If you have an impairment(s) that is not described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairment(s) are at least of equal medical significance to those of a listed impairment, we will find that your impairment(s) is medically equivalent to the analogous listing.

20 C.F.R. § 404.1526(b)(2).

In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing. *See Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003); *Scott v. Barnhart*, 297 F.3d 589, 595-96 (7th Cir. 2003). For example, in *Minnick v. Colvin,* 775 F.3d 929, 935-36 (7th Cir. 2015), the Seventh Circuit found the ALJ's perfunctory analysis to warrant remand when it was coupled with significant evidence of record that arguably supported the listing. *See Kastner v. Astrue*, 697 F.3d 642, 647-48 (7th Cir. 2012) (remanding where the ALJ's cursory listing analysis failed to articulate a rationale for denying benefits when the record supported finding in the claimant's favor)). To demonstrate that an ALJ's listing conclusion was not supported by substantial evidence, the claimant must identify evidence of record that was misstated or ignored which met or equaled the criteria. *See*, *e.g.*, *Sims v. Barnhart*, 309 F.3d 424, 429-30 (7th Cir. 2002).

Claimant does not specifically explain how the evidence of migraines equaled Listing 11.02 for seizures by detailing which alternative requirements of the listing were equaled. Listing 11.02 is satisfied generally by epilepsy "documented by a detailed description of a typical seizure and characterized by A, B, C, or D [providing the following additional requirements]:"

> A. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once a month for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); or
>
> B. Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); or
>
> C. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once every 2 months for at least 4 consecutive months (see 11.00H4) despite adherence to

> prescribed treatment (see 11.00C); and a marked limitation in one of the following:
>
> 1. Physical functioning (see 11.00G3a); or
>
> 2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
>
> 3. Interacting with others (see 11.00G3b(ii)); or
>
> 4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
>
> 5. Adapting or managing oneself (see 11.00G3b(iv)); or
>
> D. Dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:
>
> 1. Physical functioning (see 11.00G3a); or
>
> 2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
>
> 3. Interacting with others (see 11.00G3b(ii)); or
>
> 4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
>
> 5. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 11.02.

Claimant cites her responses—signed June 1, 2015—to a questionnaire provided to the SSA, stating that she had migraines twenty to thirty times per year that could keep her in bed all day. [Dkt. 4-7 at 41.] She cites to an example provided in the POMS that migraines are "very similar" to "nonconvulsive" epileptic seizures. [*See* Dkt. 7 at 24 (citing POMS, http://www.lb7.uscourts.gov/documents/115-cv-14702.pdf (last visited Dec. 6, 2019)).] As detailed above, Listing 11.02 requires that nonconvulsive, dyscognitive seizures—as opposed to convulsive, tonic-clonic seizures—occur once a week despite prescribed treatment or once every two weeks and be accompanied by marked limitation in one of the specified domains of functioning. Claimant's own allegations do not establish the frequency at once a week to equal

12

the closest analogous listing as a standalone proposition. And Claimant does not present any argument, much less supportive evidence that established she had a marked level of interference with functioning in one of the specified domains.

Moreover, as noted above, Claimant reported to her treating physician in November 2015 that she not had any headaches in the last two months. On appeal, Claimant contends that "[w]hile there are medical visit notes early on where she reported not having as many headaches, throughout the record she does continue to report having headaches off and on and her doctors continued to consider them in their treatment plans." [Dkt. 7 at 25.] Even if her migraines continued off and on, its difficult to see how that evidence would satisfy the required frequency of any of the alternative requirements of the listing. Regardless, all the evidence that Claimant cites predated her report to her treating physician that she was no longer having headaches. The evidence is also not supportive. For example, on June 26, 2015, Claimant complained "of on and off headaches that start in the back of her head and move forward which sound like tension headaches that occur occasionally and are relieved with over-the-counter medicines." [Dkt. 4-20 at 10.] According to *Sims*, Claimant cannot establish that the ALJ's listing conclusion was not supported by substantial evidence without presenting evidence that arguably met or equaled the listing. 309 F.3d at 429-30. The Court concludes that Claimant has not met her burden here.

Claimant also argues that the ALJ failed to develop the record with expert assistance, which she contends is necessary to consider medical equivalence. [*See* Dkt. 7 at 26-27.] However, the Seventh Circuit has held that in the absence of a contradictory medical opinion, where there is no evidence to support a listing, the ALJ can rely on the consultant reviewing opinions that no listing is met or equaled, even without articulating such reliance in the decision. *Scheck v. Barnhart*, 357 F.3d 697, 700-01 (7th Cir. 2004) (citing *Steward v. Bowen*, 858 F.2d

1295, 1299 (7th Cir. 1988)). Here, there is no supportive opinion that Claimant met or equaled a listing. The evidence cited by Claimant does not present a colorable claim that the closest analogous listing was met or equaled. And all the evidence that Claimant presents predated the last state agency review. [*See* Dkt. 4-4 at 23-25 (record reviewed February 19, 2016).] Accordingly, the Court does not find any error at Step Three.

C. **Work History and Credibility Determination**

Claimant asserts that the ALJ failed to take into consideration Claimant's work history when considering her credibility. [Dkt. 7 at 30.] She contends that her twenty-eight-year work history, combined with earnings beginning in 2002 that exceeded what she would be entitled to with DIB, and an unsuccessful attempt to return to that work demonstrated that she "is not a malingerer." [Dkt. 7 at 30.]

When analyzing her Step Two finding, the ALJ did acknowledge that Claimant's efforts to return to her work as a packer in November and December 2014—after her alleged onset date—met the requirements of an unsuccessful work attempt. [Dkt. 4-2 at 35.] However, the ALJ gave no explicit consideration in the written decision to Claimant's work history or work attempt when making her credibility determination. The Seventh Circuit has explained that "[a]n ALJ is not statutorily required to consider a claimant's work history, but 'a claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.'" *Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016) (quoting *Hill v. Colvin,* 807 F.3d 862, 868 (7th Cir. 2015); *Rivera v. Schweiker,* 717 F.2d 719, 725 (2d Cir. 1983)). Additionally, the Seventh Circuit has held that "a claimant's dogged efforts to work beyond her physical capacity would seem to be highly relevant in deciding her credibility and determining whether

14

she is trying to obtain government benefits by exaggerating her pain symptoms." *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014).

However, as noted above, the ALJ's credibility findings are entitled to considerable deference. Reviewing courts examine whether a credibility determination was reasoned and supported; only when an ALJ's decision "lacks any explanation or support . . . will [the Court] declare it to be 'patently wrong.'" *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008). Under the deferential standard, an ALJ's credibility determination need not be perfect. In *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011), the Seventh Circuit explained "[a]lthough we find some deficiencies in the ALJ's discussion of McKinzey's credibility, we conclude that the ALJ has pointed to sufficient evidence in the record to justify her negative determination." Here, Claimant does not engage the deferential standard or the numerous justifications offered in the written decision by the ALJ for an adverse determination. For example, the ALJ noted that Claimant's balance issues responded to treatment with physical therapy and that Claimant had denied that she could walk on a treadmill, even though the medical evidence revealed that she could maintain a functional speed of two miles per hour on a treadmill. [Dkt. 4-2 at 41.] When asked if she could walk on a treadmill at the hearing Claimant responded, "No way. No way. That's scary. I mean I guess if it's really, really slow, but a normal what you would think people walking on treadmill, uh-uh." [Dkt. 4-2 at 64.] Physical therapy records from Claimant's discharge on March 15, 2016, did show notable improvement:

> Berg balance assessment performed on her initial visit was 48/56 and today she scored 56/56. The patient is able to maintain a functional speed on the treadmill at 2 miles per hour without having to hold on. The patient is able to tolerate all high level balance challenges with self correction of loss of balance and good safety awareness.

15

[Dkt. 4-23 at 6.] Despite some conflict with her testimony, the ALJ still credited some of Claimant's subjective complaints by limiting her to sedentary work with avoidance of environmental hazards. There is also no indication in the written decision that the ALJ thought the Claimant was a malingerer, as opposed to finding that her subjective complaints may have been exaggerated.

More to the point, as noted above, the ALJ gave some weight to Claimant's treating physician's opinion that she was not a candidate for disability based on her reports of being able to complete her ADLs on her own, but that she should look for sedentary work. Claimant herself intimated to her treating physician that she did not think it was safe to return to her past work because it required her to be on her feet. The ALJ did not conclude that Claimant could return to her past work as a packer, which was performed at the medium exertional level and presumably exposed Claimant to workplace hazards. [*See* Dkt. 4-2 at 43.] The ALJ found that Claimant could perform sedentary work in accord with the opinion of her treating physician. There is no evidence that Claimant attempted to perform the type of work that her treating physician thought she was capable of performing. As such, Claimant's work history and unsuccessful work attempt are not inconsistent with the ALJ's material conclusions. Considering the unchallenged justifications supplied by the ALJ, the Court does not find that the ALJ's credibility determination was patently wrong.

## IV. **CONCLUSION**

As explained in detail above, Claimant has failed to point to any reversible error by the ALJ. Accordingly, the Commissioner's decision is **AFFIRMED**.

SO ORDERED.

Dated: 10 DEC 2019

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.